# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01838-SCT

*HELEN L. ROGILLIO*

*v.*

*DAVID M. ROGILLIO*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2008 |
| TRIAL JUDGE: | HON. MARIE WILSON |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK W. PREWITT |
| ATTORNEY FOR APPELLEE: | R. LOUIS FIELD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 03/03/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     David and Helen Rogillio were married for eleven years, living in Vicksburg with their minor son, Morgan.  Helen, who is disabled, alleges error in the chancery court's failure to award permanent periodic alimony.  The Court of Appeals affirmed.  Because the chancellor made errors in her accounting of the marital assets that resulted in an abuse of discretion, we reverse and remand.

### STATEMENT OF FACTS

¶2.     Helen and David were married in September 1997.  One child was born to the marriage, a son, Morgan, who was approximately six years old when the couple divorced in

2008.  The couple had separated in March 2007, when David and Morgan had left the marital home and moved in with David's parents.  The chancellor entered an order granting an irreconcilable-differences divorce on October 3, 2008.

¶3.    Helen and David agreed that David would have primary custody of their minor child and that David and the child would reside in the marital home.  Helen agreed to move into a mobile home that she had owned prior to the marriage, though the chancellor at one point noted that the mobile home had become marital property.[1]  The mobile home was in need of numerous repairs.  Helen was to receive exclusive ownership of the property and sole responsibility for the mortgage on it.  Further, the chancellor awarded David $436 per month in child support in the form of a social security check the child received as a result of Helen's disability.  David received sole ownership of the home and sole responsibility for the two mortgages on it.

¶4.    David was given responsibility for almost all the marital debt, as well as all ownership interest in a savings plan and his retirement account.  The chancellor ordered David to pay Helen $2,038.61 labeled as "marital assets," $4,807 labeled as credit-card debt, and lump-sum alimony in the amount of $15,000 to give her a "fresh start."

¶5.    On appeal, Helen contends that the chancellor erred in not awarding her permanent periodic alimony.  Both David and Helen are in their forties.  Helen is a registered nurse, but she stopped working in 1998 because she suffers from neurofibromatosis, a genetic disease

---

[1] The chancellor at no time entered a clear finding as to the status of this asset.  Nor did the chancellor find a current value to be placed on the mobile home.  According to the record, the purchase price of the mobile home was $41,000.

2

which has claimed the lives of multiple members of her family and for which she takes pain medications. David was fully aware of Helen's illness prior to their marriage. During the marriage, Helen had more than ten surgeries to remove tumors from various parts of her body. Her Social Security disability benefit in the gross annual amount of approximately $9,324 is her only source of income. David earns approximately $83,372 per year, is in good health, and has secure employment as an engineer.

¶6.     On her own, Helen's medication would no longer be covered under David's medical insurance. The mortgage and lot rent for her trailer would combine for $570, leaving Helen $200 to pay for food, clothing, and utilities each month. The chancellor found that, because of her disability, "the likelihood that she will obtain gainful employment in the future is very slim." The chancellor also found that David and Helen equally contributed toward marital stability of the home and harmony of the family relationships.

## DISCUSSION

*Standard of Review*

¶7.     A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous.[2] In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion.[3]

*Property Division and Alimony*

---

[2]*Sanderson v. Sanderson*, 824 So. 2d 623, 625 (Miss. 2002).

[3]*Watson v. Watson*, 724 So. 2d 350, 354 -355 (Miss. 1998)

3

¶8.    Helen assigned one error on appeal: "Whether the chancellor committed error in not granting Helen Rogillio permanent periodic alimony." The Court of Appeals cited *Johnson v. Johnson* for the proposition that alimony should be considered only "[i]f the situation is such that an equitable division of marital property . . . leaves a deficit for one party."[4] The trial court thoroughly examined the guidelines set forth in *Ferguson v. Ferguson*[5] to equitably divide David and Helen's marital estate. There were some clear errors, however, in the chancellor's accounting of marital assets. For example, in calculating the marital property, the chancellor used the full mortgage liability on the marital home to determine marital debt, but used only the equity in the home to determine marital assets. Also, by subtracting the amount loaned from David's retirement savings from the marital assets and then including that full amount in calculating marital debt, the chancellor appears to have counted that debt twice.[6] Finally, the chancellor failed to assess the value of the mobile home – likely the most valuable asset Helen owned after the divorce – and did not clearly classify it as marital or separate property. The chancellor's Order and Findings of Fact reveals the following marital assets and liabilities:[7]

---

[4]*Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994).

[5]*Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[6]The parties originally borrowed $46,000 from the TSP account. As of the date of the order, October 3, 2008, the parties owed $38,914.39. The chancellor offered no explanation for not deducting the current amount outstanding for the TSP loan.

[7]By extrajudicial agreement, Helen and David split some articles of personal property, including a truck and an ATV, though there may have been more. These articles were not classified as marital or separate or assigned values by the chancellor.

|                          | ASSETS                    | LIABILITIES           |
|--------------------------|---------------------------|-----------------------|
| TSP Savings Plan         | $82,289.74[8]             |                       |
| Est. Value Marital Home  | $169,500.00               |                       |
| 1st Mortgage on Home     |                           | $124,334.00           |
| 2nd Mortgage on Home     |                           | $19,984.00            |
| David's PERS Acct        | $6,959.68                 |                       |
| David's Checking Acct    | $136.00                   |                       |
| David's Savings Acct     | $10.00                    |                       |
| Mortgage Mobile Home     |                           | $22,917.00[9]         |
| Delinquent Rent          |                           | $1,600.00             |
| TSP Loan                 |                           | $38,914.39[10]        |
| Credit Card Debt         |                           | $9,614.37[11]         |
| Credit Union Loan        |                           | $1,214.00             |
| Construction Lien        |                           | $1,188.20             |
| Necessary Home Repairs   |                           | $7,725.00             |
| Mobile Home              | $41,000.00[12]            |                       |

¶9.  From our calculations, the couple had $299,895.42 in marital assets and $227,490.96

in marital debt.  To "split the baby" would have left David and Helen with $36,202.59 each.

---

[8] This is the difference between the amount that was in this savings account on the day of the decree and the amount in the savings account at the time of the marriage, or the amount earned and saved during the marriage.

[9] The chancellor regularly referred to the mobile home, acquired by Helen before the marriage, as "Helen's," but found in Footnote 8 of the Memorandum Opinion that the mobile home "was rented out during the marriage and the proceeds mingled with the household money and use for the benefit of the family, thus becoming a marital asset."

[10] This represents a loan taken out by the Rogillios, collateralized by David's Retirement Savings Account.  Because the chancellor reflected this loan as marital debt and subtracted its value from the balance on the savings account, the loan was counted twice, significantly underestimating the value of the savings account as an asset.  Further the chancellor miscalculated the equity in the account by using the *original* loan amount, instead of the balance owed.

[11] All of the credit-card debt was in Helen's name.

[12] Again, the chancellor was unclear about whether this asset was separate or marital. In either case, the chancellor erred by failing to find the value of this asset.  We have used its purchase price, which, we admit, is likely a gross overestimate.

5

However, based on the chancellor's distribution (before alimony), David received $258,895.42 in assets and $192,480.39 in debt for a net of $66,415.03. If we assume that a ten-year-old mobile home has retained its purchase-price value of $41,000, Helen leaves the marriage with net marital assets of $5,989.43.[13]

¶10.    After finding that an equitable deficit existed, the chancellor proceeded to the consideration of alimony under the factors we outlined in *Armstrong v. Armstrong*.[14] Finding that the *Armstrong* factors favored alimony, the chancellor awarded $15,000 in lump-sum alimony. But even after this measure, the difference in assets is still staggering. David would still exit the marriage with $51,415.03 of the net marital assets, while Helen would have $20,989.43.

¶11.    Four distinct types of alimony are recognized in Mississippi – permanent, lump sum, rehabilitative, and reimbursement.[15] The purpose of permanent periodic alimony is to be a substitute for the marital-support obligation.[16] The award of permanent periodic alimony arises from the duty of the husband to support his wife.[17] We also have said that the husband is required to support his wife in the manner to which she has become accustomed, to the

---

[13]These net values account for the chancellor's order that David pay half of Helen's credit card debt, as well as $2,038.61 labeled as "marital assets."

[14]*Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

[15]Deborah H. Bell, *Mississippi Family Law* § 9.02 (2005).

[16]*Id.* at 9.02[1].

[17]*McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996).

extent of his ability to pay.[18]  To update our language: Consistent with ***Armstrong***, a financially independent spouse may be required to support the financially dependent spouse in the manner in which the dependent spouse was supported during the marriage, subject to a material change in circumstances.

¶12.    Lump-sum alimony has been described as "a means of adjusting financial inequities that remain after property division.[19]  The chancellor quoted ***Seymour v. Seymour*** for the proposition that alimony ought to be considered "if one party will suffer a deficit after the marital property has been equitably divided."[20]  Then, the Court examined the alimony factors set out in ***Hemsley v. Hemsley***.[21]

¶13.    The chancellor's findings of fact are clear that Helen is unlikely to be able to support herself financially.  Her income level, as determined by the chancellor, fell below the 2008 federal poverty threshold for a single person.[22]  While the Court of Appeals referenced some allegations of fault by Helen (which were not found by the trial court), we have held that even fault does not stand as a bar to alimony where the denial would render the other spouse destitute.[23]  And we will not abide denials of alimony that shock the conscience.[24]

---

[18]***Brennan v. Brennan***, 638 So. 2d 1320, 1324 (Miss. 1994).

[19]Deborah H. Bell, *Mississippi Family Law* § 9.02[2][a][ii].

[20]***Seymour v. Seymour***, 960 So. 2d 513, 519 (Miss. Ct. App. 2006).

[21]***Hemsley v. Hemsley***, 639 So. 2d 909 (Miss. 1994).

[22]The 2008 Federal Poverty Threshold for a single-person household was $10,400. 73 Fed. Reg. 3971-72 (January 23, 2008).

[23] ***Hammonds v. Hammonds***, 597 So. 2d 653, 655 (Miss. 1992).

[24]*See* ***Box v. Box***, 622 So. 2d 284, 288 (Miss. 1993).

¶14. On the other hand, in deference to trial courts, we rarely have granted reversal on alimony matters. In **Ericson v. Tullos**, the Court of Appeals would not overturn a chancellor's decision to deny alimony.[25] There, the spouse seeking permanent periodic alimony was a quadriplegic surviving on long-term disability that ran out in 2006 and on Social Security, while the other spouse was an insurance agent grossing more than $87,000 per year.[26] This is not a guideline for when alimony is appropriate – every divorce is a unique set of facts – but it is an exhibit of how far our deference has reached.

¶15. Considering the actual net estate (including lump-sum alimony) of the parties, accounting for the chancellor's apparent errors in calculation, and considering Helen's extremely low income level, we find that the chancellor abused her discretion. The alimony and asset distribution does cover the necessary repairs to the mobile home, delinquent rent at the trailer park, and credit-card debt, but leaves only $2,050.61 to spare. Considering, further, the great disparity in income between David and Helen, the significant decrease in comfort and station she will experience as a result of the divorce, and her disability, this award and distribution of assets is not adequate.

¶16. Chief Justice Waller writes to agree with the chancellor's decision to deny alimony. However, the errors in the distribution of assets make that determination improper and impossible. Alimony and distribution of assets are distinct, but interrelated, concepts, and where one expands, the other must recede.[27] Where assets are not classified, not considered,

---

[25]**Ericson v. Tullos**, 876 So. 2d 1038, 1041 (Miss. Ct. App. 2004).

[26]**Id.**

[27]**Ferguson**, 639 So. 2d at 929.

8

and/or not given values, it is impossible to determine that a grant of alimony is adequate. However, we do not command the chancellor to increase alimony. We remand only so that the chancellor may properly classify and evaluate all assets of both parties and then consider the need for alimony consistent with this and prior opinions.

## CONCLUSION

¶17. Under the facts of this case, the chancellor erred in improperly analyzing the equitable distribution of marital assets and by doing so not adequately considering alimony. The lump-sum alimony payments may be increased, consistent with an accurate accounting of the marital and separate estates set out within this opinion. Furthermore, an award of permanent periodic alimony may be considered, balancing the husband's right to live as normal a life as possible with a decent standard of living and the wife's entitlement to support corresponding to her rank and station in life. The chancellor should carefully review the needs of the wife to live her life in a manner comparable to that which she enjoyed during the marriage and to consider her future needs. Because the need for alimony is affected by the distribution of marital assets and liabilities, we reverse the Court of Appeals and the chancellor's findings *in toto* and remand for a hearing consistent with this opinion.

¶18. **REVERSED AND REMANDED.**

**CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS AND CHANDLER, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. KING, J., NOT PARTICIPATING.**

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶19. Because I believe that the chancellor equitably divided the marital estate and awarded sufficient alimony, I respectfully dissent.

9

¶20. Helen does not contest the equitable division of their marital property or the lump-sum alimony amount. Her brief states that "[i]t is not [Helen's position] that the chancellor erred in awarding lump-sum alimony . . . , rather it is her position that due to the disparity in income and lifestyle between [her] and David, that the chancellor committed error by not awarding permanent periodic alimony." Similarly, her petition for certiorari requests that this Court "reverse the disallowance of permanent periodic alimony. . . ." Because Helen does not contest the property division or lump-sum alimony amount, we need not address those issues. *See* M.R.A.P. 17, 28.

¶21. Still, I find that the chancellor equitably divided their marital estate and awarded more than sufficient lump-sum alimony. In the chancellor's final order, she addressed the *Ferguson* factors, then equally divided the equity in their home, the TSP, the PERS account, and the bank accounts. *See Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994). Save for the delinquent rent and the mobile-home repairs, the chancellor also equally divided their marital debts. If we follow the chancellor's logic and equally split the equity in the mobile home,[28] Helen received more than enough to cover any numerical equitable deficit.

¶22. After thorough, on-the-record findings, the chancellor determined that a $15,000 lump-sum award would enable Helen's "fresh start." Considering the actual numerical

---

[28]In assessing the *Ferguson* factors, the chancellor recognized that Helen and David already had agreed to divide the following marital property: their income-tax refunds, the mobile home, the Tahoe, the Jeep, and the household furnishings and appliances. I think this logically suggests that Helen received all the equity in the mobile home, which further supports my finding that she received sufficient lump-sump alimony. *See Ferguson*, 639 So. 2d 928.

deficit, the amounts Helen received in marital-asset and debt payments, and the other factors addressed in the final order, the chancellor did not abuse her discretion in awarding this amount in lump-sum alimony.

¶23.    As discussed above, Helen contends that the chancellor erred in awarding lump-sum rather than permanent alimony.  Specifically, she refers to her initial pleadings requesting $1,500 per month and contends that "equity demands" that she be "entitled" to  permanent alimony.

¶24.    A chancellor's decision to award permanent alimony must consider both need and ability to pay.  *See **Armstrong v. Armstrong***, 618 So. 2d 1278, 1280 (Miss. 1993); ***Gray v. Gray***, 562 So. 2d 79, 83 (Miss. 1990).  In making that decision, the chancellor considers, in relevant part, the reasonable net income and expenses of both spouses.  ***Box v. Box***, 622 So. 2d 284, 288 (Miss. 1993).

¶25.    Here, a full evaluation of David's net income and reasonable expenses dispels Helen's contention that she is "entitled" to permanent alimony.  David had no disposable income after his recurring monthly expenses; thus, making a monthly permanent-alimony payment would have been impossible unless he sacrificed the basic needs of their child or his household.  In fact, since David had no funds remaining after his and Morgan's expenses, the chancellor would have committed reversible error had she required him to pay permanent alimony in any amount.  *See **McEachern v. McEachern***, 605 So. 2d 809, 814-15 (Miss. 1992).

¶26.    In sum, neither our precedent nor equity requires the chancellor to ensure a particular standard of living for the payee spouse to the utter detriment of the payor spouse and minor child.  And that any of us might have arrived at a different decision matters not, as the

chancellor fully considered Helen's and David's financial statements and heard their testimony. The chancellor awarded sufficient lump-sum alimony in light of the factors discussed above. Further, the chancellor's decision to award lump-sum instead of permanent alimony was supported by substantial, credible evidence showing that David did not have the ability to make a monthly payment. Therefore, I would affirm the chancery court's and the Court of Appeals's decision.

**LAMAR, J., JOINS THIS OPINION.**