IRVING, P.J.,
for the Court:
¶ 1. On August 19, 2011, the Harrison County Chancery Court granted Thomas Watts Sawyer (Tom) and Kay Dywana Sawyer (Dywana) a divorce on the ground of irreconcilable differences. The chancery court also granted physical custody of the couple’s minor child to Dywana, made determinations regarding the distribution of the couple’s marital property, and awarded Dywana $2,000 per month in periodic alimony. Feeling aggrieved, Tom appeals and argues that the chancery court erred in awarding Dywana periodic alimony.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Tom and Dywana were married on March 2, 1991. In 1994, the couple had one son, Clint, who was seventeen years old when they divorced. Tom’s daughter from a previous marriage also lived with the couple throughout their marriage. Tom and Dywana separated on July 1, 2007.
¶ 4. At the time of the divorce, Dywana was forty-six years old. She had attended Pearl River Community College for one and one-half years, but dropped out after her father’s death. She then worked as a full-time employee at RPM Pizza in various departments. After her marriage to Tom, he requested that she leave her job to become a stay-at-home mom to his daughter. In response to Tom’s request, Dywana quit her job at RPM Pizza but began working part-time at Tom’s insurance agency on an as-needed basis until Clint was born. She had not held a job since Clint’s birth.
¶ 5. In 1998, Dywana’s gynecologist diagnosed her with leiomyosarcoma, a form of cancer that primarily affected her pelvic and uterus areas. The cancer was malignant and was removed in January 1999. Afterwards, Dywana underwent six months of intensive chemotherapy. Although she was cancer free at the time of trial, she is required to have periodic follow-ups. Additionally, Dywana has adult diabetes, thyroid nodules, a fatty liver, high blood pressure, and knee problems. Dywana described the injuries to her knees as a torn ACL, MCL and PCL, and a torn meniscus. The injuries prevent her from descending stairs and, according to Dywana, sitting, standing, or walking for prolonged periods of time. Dywana takes *847 medication daily for her diabetes, a fluid pill for high lipids, blood-pressure medication, and Lexapro. Her internist indicated that she was able to do “some light sedentary work.” Tom did not dispute any of Dywana’s health issues.
¶ 6. Tom, at the time of the divorce, was fifty-eight years old. Before his marriage to Dywana, Tom became the sole shareholder and owner of Sawyer Insurance Agency. In 1992, Tom sold fifty percent of the agency’s shares to Calvin Foster. In 2006, the agency sold its assets to Beecher-Carlson for an initial payment of cash and restricted stock in Beecher-Carlson. The agreement provided for a deferred payout in five years and stated that Beecher-Carlson was obligated to pay Tom an annual salary of $175,000 for five years. As of the date of trial, Beecher-Carlson had decided not to renew Tom’s initial employment contract, choosing instead to retain him as an employee who will be paid on a commission basis. The chancery court valued Tom’s interest in Beecher-Carlson at $1,273,716. The court also determined that $750,697 of Tom’s Beecher-Carlson interest was marital property and subject to equitable distribution.
¶ 7. Tom purchased a fifty percent interest in Gulf Breeze Property LLC during his marriage to Dywana. The court valued Tom’s equity in the company at $50,297. Tom also owns real estate in Costa Rica. His equity in the Costa Rican property is valued at $155,697, which the court determined was a marital asset subject to equitable distribution. The court also determined that the couple’s home in Long Beach, Mississippi, was a marital asset subject to equitable distribution. The court valued the equity in the home at $82,102.
¶ 8. At the conclusion of trial, the chancery court awarded Dywana $843,848.50, to be paid from the Beecher-Carlson payout; sole ownership and possession of the marital home and the equity in the marital home valued at $82,102; the contents of the marital home valued at $25,000; title and possession of Tom’s Steifel IRA valued at $148,613.42; Tom’s Beecher-Carlson 401(k) valued at $46,426; a UBS Financial Services account valued at $7,566; title and possession of her GMC Yukon valued at $10,610; and possession of her jewelry valued at $25,000. The court awarded Tom the following portion of the couple’s marital estate: $343,848.50, received from the Beecher-Carlson payout; equity in Mountain Breeze Properties S.A. valued at $155,697; Tom’s Costa Rican bank account valued at $1,625; equity in Gulf Breeze Properties LLC valued at $50,297; equity in Sawyer Foster Insurance Inc. valued at $11,432; Tom’s guns valued at $7,500; a boat valued at $150,000; a 2006 Mercedes valued at $21,181; a 2007 Nissan valued at $13,500; his jewelry valued at $5,000; and the contents of his apartment valued at $12,000.
¶ 9. The court also required Tom to pay: $2,000 per month in alimony, Dywana’s COBRA health-insurance premiums, child support and a child allowance for Clint, the cost of health insurance for Clint, expenses for the maintenance and repair of Clint’s vehicle, and all of Clint’s college expenses equal to the cost of attendance at a Mississippi state-supported institution.
¶ 10. Additional facts, as necessary, will be related in our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 11. Appellate courts will not disturb a chancery court’s factual findings unless the court abused its discretion, was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard. *848 Sanderson v. Sanderson, 824 So.2d 628, 625-26 (¶ 8) (Miss.2002). “In the case of a claimed inadequacy ... of alimony, [appellate courts] will interfere only where the decision is seen as so oppressive, unjust[,] or grossly inadequate as to evidence an abuse of discretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Additionally, the Mississippi Supreme Court has stated that “[consistent with Armstrong, a financially independent spouse may be required to support the financially dependent spouse in the manner in which the dependent spouse was supported during the marriage, subject to a material change in circumstances.” Rogillio v. Rogillio, 57 So.3d 1246, 1250 (¶ 11) (Miss.2011).
¶ 12. Tom contends that the chancery court erred in awarding alimony to Dywa-na. However, we find no error with the chancery court’s award. Prior to awarding periodic alimony, the chancery court throughly examined the guidelines set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), to divide Tom and Dywana’s marital estate equitably. The chancery court noted in its order that both parties had contributed equally to the marriage. Dywana had not been employed full-time since her marriage to Tom, and she had no separate estate. Additionally, while Tom is in good health and able to continue to work to support himself, Dy-wana’s health issues (cancer and a host of issues with her knees) will prohibit her from seeking gainful employment. After the equitable division, Tom received $772,080.60 in marital assets. Additionally, Tom has a sizeable separate estate. Dywana received $689,165.50 in marital assets. The difference between the couple’s estates after the equitable division of marital property was $82,915.10.
¶ 13. Although the court never specifically stated that an equitable deficit existed between the parties after the distribution of the couple’s marital assets, the court, nevertheless, proceeded to consider alimony under the factors outlined in Armstrong. In determining whether an award of periodic alimony is appropriate, the chancery court must examine the following factors: (1) “[t]he income and expenses of the parties”; (2) “[t]he health and earning capacities of the parties”; (3) “[t]he needs of each party”; (4) “[t]he obligations and assets of each party”; (5) “[t]he length of the marriage”; (6) “[t]he presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care”; (7) “[t]he age of the parties”; (8) “[t]he standard of living of the parties, both during the marriage and at the time of the support determination”; (9) “[t]he tax consequences of the spousal support order”; (10) “[f]ault or misconduct”; (11) “[w]asteful dissipation of assets by either party”; or (12) “[a]ny other factor deemed by the court to be just and equitable in connection with the setting of spousal support.” Armstrong, 618 So.2d at 1280 (citations omitted) (internal quotation marks omitted).
¶ 14. In examining the factors, the chancery court listed each factor and discussed the evidence relevant to each. The court noted that Dywana had no income, and while Tom’s days of receiving a guaranteed salary from Beecher-Carlson were ending, he, nevertheless, remained employed and was capable of obtaining suitable employment. Moreover, Dywana would be unable to afford the expenses associated with the marital property that she received during the equitable division of the marital estate. Of the two parties, Tom, who has no significant health issues, has greater earning capacity, while Dywa-na’s earning capacity is substantially limited given her health issues. The court *849 noted that even if Dywana were able to obtain a minimum-wage job, that type of “employment is not consistent with the lifestyle she enjoyed during the marriage.”
¶ 15. Tom and Dywana were married for approximately twenty years, and although they had a child together, he did not require child care. Also, during the marriage, the parties enjoyed an above-average standard of living, but the lifestyles of both parties had changed since their separation. After discussing these factors, the chancery court awarded Dywa-na $2,000 per month as periodic alimony. Although Tom claims to suffer financial hardship, it is undisputed that he is employed and able to support himself. It is also undisputed that Dywana’s health issues limit her ability to work, and, given her health limitations, she is not likely to generate an income sufficient to support herself.
¶ 16. Based on these facts, we find that the chancery court properly analyzed and applied the Armstrong factors in this case with respect to alimony. Accordingly, the court did not abuse its discretion in awarding alimony to Dywana. This issue is without merit.
¶ 17. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.