# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00594-COA

**KIMBERLY DENISE WYLIE**                                              **APPELLANT**

v.

**JAMES WILLARD WYLIE**                                                **APPELLEE**

DATE OF JUDGMENT:               03/25/2013
TRIAL JUDGE:                    HON. EDWARD C. FENWICK
COURT FROM WHICH APPEALED:      ATTALA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        SABRINA D. HOWELL
                                A.E. (RUSTY) HARLOW JR.
ATTORNEY FOR APPELLEE:          JAMES WILLARD WYLIE (PRO SE)
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        JUDGMENT OF DIVORCE ENTERED;
                                PROPERTY DIVIDED
DISPOSITION:                    AFFIRMED: 09/16/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Kimberly Wylie appeals the judgment entered in the dissolution of her marriage from James Wylie. The chancellor divided the marital property and then awarded Kimberly rehabilitative alimony for three years, together with $2,500 in attorney's fees. Kimberly argues that the chancellor was in error to not award her periodic alimony, instead of three years of rehabilitative alimony, and to not award a higher sum for attorney's fees.

## FACTS

¶2.    Kimberly and James were married on November 26, 1987. They separated on April

24, 2012. Two children were born of the marriage, both of whom are emancipated.

¶3.    Kimberly filed a complaint for divorce on the grounds of irreconcilable differences, habitual cruel and inhuman treatment, and uncondoned adultery. Kimberly asked the court for temporary and permanent alimony, temporary and permanent use of the marital residence, and an equitable division of the marital property. James answered the complaint and filed a counterclaim. His alleged that he was entitled to a divorce on the grounds of habitual cruel and inhuman treatment and irreconcilable differences. James also asked for an equitable division of the marital property and attorney's fees.

¶4.    At trial, James admitted that he was openly living with another woman with whom he had fathered a child. James testified that he quit school in the ninth grade and began working as a carpenter. He later worked in logging and as a part-time mechanic on weekends. In May 2008, James began working as a pipeliner in the oil business. James testified that his gross income was $86,000 in 2008, $96,000 in 2009, $89,000 in 2010, $95,000 in 2011, and $129,935 in 2012. However, James said that at the time of trial he was between jobs, and he was receiving $2,179 per month in unemployment benefits.

¶5.    Kimberly testified that she last worked in the pharmacy at Walmart in 2008. She earned between $500 and $600 per month in that job. Kimberly admitted that she had not attempted to find employment since she left Walmart due to health reasons. Kimberly stated that she suffered from diabetes, high blood pressure and sleep apnea, as well as another condition that has never been diagnosed. Kimberly applied for Social Security disability benefits, but her claim was denied.

2

¶6.    The chancellor entered a judgment of divorce that granted Kimberly a divorce on the ground of adultery. The chancellor divided the marital property, which is not an issue in this appeal, and awarded Kimberly rehabilitative alimony of $700 per month for three years. The chancellor also awarded Kimberly $2,500 in attorney's fees.

## STANDARD OF REVIEW

¶7.    Our scope of review in domestic-relations matters is strictly limited. *Curry v. Frazier*, 119 So. 3d 362, 365 (¶8) (Miss. Ct. App. 2013). "A chancellor's findings will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.*

## ANALYSIS

¶8.    The chancellor followed the proper procedure for the equitable division of assets and the award of alimony. *See, e.g., Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994). Kimberly was awarded equity in the marital home of $35,000, a 2005 Pontiac automobile with equity of $6,325, and certain household furnishings valued at less than $8,000. James was awarded his truck with a debt of $20,000 and equity of $1,277. He was also awarded his tools, guns, dining-room table, and two rings. James was ordered to pay the mortgage on the marital home, approximately $344 per month.

### I.    Alimony

¶9.    The chancellor determined that alimony was appropriate. The chancellor concluded that "under the facts of this case because the marital assets are not large enough to offset the disparity in the two (2) parties' incomes, the court must consider alimony . . . ." The chancellor then considered the *Armstrong* factors and determined that James should pay

3

Kimberley $700 per month in rehabilitative alimony for three years.

¶10.    Kimberly argues that it was error for the chancellor to award her rehabilitative alimony of $700 for three years instead of periodic alimony.  Kimberly claims that based on her limited work history and earning capacity, as opposed to James's strong work history and earning capacity, equity requires more than a time-limited award of rehabilitative alimony that is unjust, oppressive, and so grossly inadequate.  Kimberly argues that $700 per month for three years will leave her unable to meet her estimated living expenses of $2,032 each month.

¶11.    In *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993), the Mississippi Supreme Court set forth the factors to be used to determine whether a spouse is entitled to alimony.  These factors include:

1.    The income and expenses of the parties;

2.    The health and earning capacities of the parties;

3.    The needs of each party;

4.    The obligations and assets of each party;

5.    The length of the marriage;

6.    The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7.    The age of the parties;

8.    The standard of living of the parties, both during the marriage and at the time of the support determination;

9.    The tax consequences of the spousal order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; and

12. Any other factor deemed by the court to be just and equitable in connection with the spousal support.

¶12. The chancellor's opinion provided detailed findings on each of the *Armstrong* factors. The chancellor correctly recognized that Kimberly and James had a long marriage and that there were no minor children, as well as the age of the parties, the absence of any special tax consequences, and the lack of wasteful dissipation of assets. The chancellor also found:

4. *The obligation and assets of each party:*

The parties owe the mortgage secured by the marital home of about $20,000.00. James owes another $20,000.00 on the Ford F-350 he recently purchased. Because Kimberly has not worked in the past five (5) years, James has carried the full responsibility for servicing all the household debts during this time. Kimberly has no debt. With the proposed division of assets, Kimberly will be getting $41,325.00 (comprised of the house and her car), while James will be getting $5,777.00 (comprised of his three [3] trucks).

. . . .

8. *The standard of living of the parties, both during the marriage and at the time of the support determination:*

James's income has allowed the parties to live a modest, but comfortable lifestyle. Living on the road as a pipeliner requires James to maintain a permanent residence as well pay the cost of living at each job location.

. . . .

10. *Fault or misconduct:*

From the evidence offered at trial, James's adultery was the primary cause of the failure of this marriage. James testified that the marriage had not been a good one in a number of years before the separation and that there was no intimacy between them during the last three (3) years they were together.

5

¶13. Kimberly challenges the chancellor's decision to impute an annual income of $12,000, roughly minimum wage, to her. She contends that her age, health, and limited work history did not support the chancellor's computation of her earning capacity. She also argues that her limited work history and earning capacity "stood in stark contrast" to James's strong work history and documented high earning capacity. The chancellor took this into consideration when he imputed an annual earning capacity of $90,000 to James and $12,000 to Kimberly. The evidence indicated that both of the parties were unemployed at the time of trial, and James was drawing unemployment compensation. Kimberly has cited no case authority to support the conclusion that the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard in his *Armstrong* findings.

¶14. Next, Kimberly argues that the chancellor erred when he granted her rehabilitative alimony instead of periodic alimony. "The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life." *Elliot v. Elliot*, 11 So. 3d 784, 786 (¶8) (Miss. Ct. App. 2009).

¶15. Periodic alimony is a "substitute for the marital-support obligation. The award of . . . periodic alimony arises from the duty of the husband to support his wife." *Rogillio v. Rogillio*, 57 So. 3d 1246, 1250 (¶11) (Miss. 2011) (internal citation omitted). As such, "a husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay." *Id.* In other words, "a financially independent spouse may be required to support the financially dependent spouse in the manner in which the dependent spouse was supported during the marriage, subject to a material change in circumstances." *Id.* On the other hand, "[r]ehabilitative . . . alimony is an equitable

mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." *Cuccia v. Cuccia*, 90 So. 3d 1228, 1236 (¶25) (Miss. 2012) (citing *Hubbard v. Hubbard*, 656 So. 2d 124, 130 (Miss. 1995)). Furthermore, "[r]ehabilitative alimony is not to be considered by the chancery court as an equalizer between the parties." *Id.*

¶16. The chancellor found:

> Alimony should be considered only when the circumstances are such that an equitable division of marital property, taking into account each party's non-marital assets, leaves a deficit for one party. *Roberts v. Roberts*, 924 So. 2d 550 (Miss. [Ct.] App. 2005)[;] *Johnson v. Johnson*, 650 So. 2d 1281 (Miss. 1994). Under the proposed division, Kimberly is receiving a substantially higher share of the marital assets. Without taking into account the household goods and furnishings, she is receiving all of the equity in the marital home of $35,000.00 and the Pontiac automobile valued at $6,325.00, for a total of $41,325.00. By comparison, James is getting three (3) vehicles valued at $5,700.00.
>
> Taking into account the *Armstrong* factors as outlined above, the Court finds that James should be ordered to pay to Kimberly the sum of $700.00 per month as rehabilitative alimony for a period of three (3) years beginning on the first day of the month following the date the judgment is entered. This obligation will terminate upon the death of either party or upon the remarriage of Kimberly.

¶17. Here, the chancellor considered a marriage that included limited marital assets and limited earning potential. At the time of the trial, neither party was employed, and their present income was minimal. Although the chancellor did not provide a more detailed explanation of the reason to award rehabilitative alimony instead of periodic alimony, our law recognizes that a chancellor "enjoys wide discretion in fashioning the financial aspects of the dissolution of a marriage" and will only be reversed on appeal if he abused that discretion. *Avery v. Avery*, 864 So. 2d 1054, 1056 (¶9) (Miss. Ct. App. 2004). We are of the

7

opinion that the findings were sufficient to support the award.

¶18.    Kimberly also argues that the chancellor erred in awarding her only $700 per month. The chancellor found that Kimberly's monthly living expenses totaled $2,032, and estimated her earning capacity to be $1,070. This would leave Kimberly with an approximately $300 deficit.

¶19.    Again, we note that, at the time of the trial, James was unemployed and was receiving $2,179 per month in unemployment benefits. The chancellor found James's monthly living expenses totaled $3,404. The chancellor ordered James to pay $700 per month in alimony and $344 per month on the mortgage.

¶20.    Here, the numbers provided by the parties will simply not add up. Based on the parties' income at the time of the trial, their income cannot meet their expenses. This is often the difficult challenge for chancellors to resolve in the dissolution of a marriage. Hence, this is the reason that our law provides that a chancellor "enjoys wide discretion in fashioning the financial aspects of the dissolution of a marriage" and will only be reversed on appeal if he abused that discretion. *Avery*, 864 So. 2d at 1056 (¶9).

¶21.    Based on the parties' estimated monthly living expenses and James's income as of the date of the trial, we cannot say that the chancellor abused his discretion by awarding Kimberly $700 per month in alimony.

II.    *Attorney's Fees*

¶22.    Kimberly also challenges the chancellor's decision as to the award of attorney's fees. Kimberly argues it was error to not award her the total amount of attorney's fees that she incurred. Kimberly submitted an affidavit showing that she incurred attorney's fees totaling

8

$5,151.85.[1] The trial court ultimately awarded Kimberly partial fees of $2,500. Kimberly argues that she presented ample evidence at trial demonstrating her inability to pay her attorney's fees; thus, the trial court erred in failing to award her the full amount that she incurred. Kimberly further claims that the chancellor erred by not discussing the factors set forth in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).[2]

¶23.    In the opinion, the chancellor noted that Kimberly requested attorney's fees in the amount of $5,151.85 and found: "[H]aving considered the *McKee* factors, the court finds that this is an appropriate case to award Kimberly a partial attorney's fee of $2,500." "The matter of awarding attorney's fees is largely entrusted to the sound discretion of the chancellor." *Rhodes v. Rhodes*, 52 So. 3d 430, 449 (¶77) (Miss. Ct. App. 2011) (citing *McKee,* 418 So. 2d at 767). Thus, "we are reluctant to disturb a chancellor's discretionary determination whether or not to award attorney's fees and . . . the amount of any award." *Id.* (quoting *Smith v. Smith*, 614 So. 2d 394, 398 (Miss. 1993)).

¶24.    We have held that "failure to address the *McKee* factors is not necessarily a cause to reverse an award." *Miley v. Daniel*, 37 So. 3d 84, 87 (¶7) (Miss. Ct. App. 2009) (quoting *Mitchell v. Mitchell*, 823 So. 2d 568, 573 (¶23) (Miss. Ct. App. 2002)). Here, the chancellor properly considered the *McKee* factors regardless of whether his written opinion contained

---

[1] This affidavit, although entered into evidence during the trial, was not in the record.

[2] The *McKee* factors include: (1) a party's financial inability to pay, (2) the skill and standing of the attorney, (3) the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, (4) the time and labor required, (5) the usual and customary charge in the community, and (6) the preclusion of other employment by the attorney due to the acceptance of the case. *McKee*, 418 So. 2d at 767.

a discussion of each individual factor.

¶25. Having found no error, the judgment of the chancery court is affirmed.

¶26. **THE JUDGMENT OF THE CHANCERY COURT OF ATTALA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**JAMES, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶27. I agree with the majority's decision regarding attorney's fees. However, I would find that the chancellor abused his discretion by awarding Kimberly rehabilitative alimony rather than periodic alimony; therefore; I respectfully concur in part and dissent in part.

¶28. In *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993), the Mississippi Supreme Court set forth the factors to be used to determine whether a spouse is entitled to alimony:

1. The income and expenses of the parties;

2. The health and earning capacities of the parties;

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at

10

the time of the support determination;

9.      The tax consequences of the spousal order;

10.     Fault or misconduct;

11.     Wasteful dissipation of assets by either party; and

12.     Any other factor deemed by the court to be just and equitable in connection with the spousal support.

### A.    The Parties' Expenses and Income

¶29.    James's income, at the time of the proceeding, was $2,179 a month from unemployment benefits. The chancellor noted that Kimberly had no income and had not worked since 2008. Kimberly's living expenses were $2,032 per month, while James's living expenses totaled $3,404 per month. The chancellor further found:

> [D]uring the past five years James shows earning[s] between $86,000 and $130,000. At the current minimum wage of $7.25 an hour, a [full-time worker] brings home around $1,070 each month. Under the facts in this case[,] the court is of the opinion that it is justified in imputing the ability of James to earn at least $90,000 a year and Kimberly to earn at least $12,000 a year.

### B.    Health and Earning Capacities of the Parties

¶30.    The chancellor found James to be in good health and, at age forty-four, "entering his peak earning years." The chancellor further noted that James's substantially higher earning capacity gave him an objectively more secure financial future. In contrast, Kimberly, at age forty-two, suffered from diabetes, hypertension, and sleep apnea. The chancellor found these ailments to be well managed based on Kimberly's testimony. Considering Kimberly's health, age, and work history, the chancellor found that her earning capacity was limited to minimum wage or slightly better than minimum wage.

11

### C.     Other Findings

¶31.    The parties were married for twenty-five years.  The chancellor found that the James's infidelity was the primary cause of the failure of the marriage.  Finally, noting that alimony is properly considered in conjunction with the division of marital property, the chancellor took into account the disparity in the property division, noting that "under the . . . division [of marital property,] Kimberly is receiving a substantially higher share of the marital assets." The property subject to marital distribution included the marital home and household furnishings and four vehicles.  The chancellor noted that "[w]ithout taking into account the household goods and furnishings, Kimberly is receiving all of the equity in the marital home of $35,000.00 and the Pontiac automobile valued at $6,325.00, for a total of $41,325.00[,] . . . [and] James is getting three (3) vehicles valued at $5,700.00."[3]

¶32.    Based on these findings, the chancellor awarded Kimberly rehabilitative alimony of $700 per month for three years.  Given the chancellor's findings and the evidence and testimony at trial, I find that the chancellor abused his discretion in awarding rehabilitative alimony rather than periodic alimony.

¶33.    "The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life." *Elliot v. Elliot*, 11 So. 3d 784, 786 (¶8) (Miss. Ct. App. 2009).  Periodic alimony is a "substitute for the marital-support obligation.  The award of . . . periodic alimony arises from the duty of the

---

[3] In addition, James was awarded two rings, guns, tools, and a dining-room table that James characterized as a family heirloom.  All other personal property and household goods were awarded to Kimberly.

husband to support his wife.*" Rogillio v. Rogillio*, 57 So. 3d 1246, 1250 (¶11) (Miss. 2011) (internal citation omitted). As such, "a husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay." *Id.* In other words, "a financially independent spouse may be required to support the financially dependent spouse in the manner in which the dependent spouse was supported during the marriage, subject to a material change in circumstances." *Id.* On the other hand, "[r]ehabilitative . . . alimony is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." *Cuccia v. Cuccia*, 90 So. 3d 1228, 1236 (¶25) (Miss. 2012) (citing *Hubbard v. Hubbard*, 656 So. 2d 124, 130 (Miss. 1995)). Furthermore, "[r]ehabilitative alimony is not to be considered by the chancery court as an equalizer between the parties." *Id.*

¶34. The chancellor found that Kimberly's health issues were well managed, and he estimated that she possessed an earning capacity of $1,070 per month, or $12,000 per year.[4] However, these findings are inconsistent with the testimony at trial. Kimberly testified that, in addition to her diabetes, hypertension, and sleep apnea, she suffered from an unknown illness, for which she has been hospitalized several times. She further testified that her health issues prevented her from maintaining a job. Kimberly last worked in the pharmacy at Walmart; however, she was terminated for missing too much work due to her poor health. Likewise, the chancellor estimated Kimberly's earning capacity to be $1,070 per month. However, Kimberly testified that her job at Walmart, which paid approximately $500 to $600 per month, was the most lucrative employment she had ever been able to secure. It is clear

---

[4] To be precise, $1,070 per month would total $12,840 per year.

from her testimony that Kimberly was completely dependent on James for support.

¶35. These inconsistencies notwithstanding, the chancellor found that James had an earning capacity of $90,000 per year, while Kimberly had an earning capacity of $12,000 per year. This finding does not support an award of rehabilitative alimony of $700 per month for three years. Given Kimberly's health problems and limited work history, I find it doubtful that she will be able to become self-supporting in the near future.

¶36. The disparity in the equitable distribution of the marital property is noted. Kimberly received property totaling $41,325.00, which includes the marital home, while James is getting three vehicles valued at $5,700. However, a disparity in the equitable distribution of the marital property should not be a mechanism to deny periodic alimony where the facts of the case warrant an award of periodic alimony. Here, the marital property consists of unliquidated assets. Kimberly cannot spend unliquidated assets, and the record does not show that she is capable of managing or generating funds from the assets to care for herself. James is required to support Kimberly in a manner to which she has become accustomed to the extent of his ability to pay. *Rogillio*, 57 So. 3d at 1250 (¶11).

¶37. Therefore, I would find that the chancellor abused his discretion in awarding rehabilitative alimony rather than periodic alimony. Therefore, I would reverse the chancellor's award of rehabilitative alimony.

¶38. An award of $700 per month for three years after twenty-five years of marriage is not an equitable award. It is completely inadequate. However, based on the parties' present financial situation, I agree with the majority's finding that the chancellor did not err in the amount of the award. When the alimony payment of $700 per month is considered with the

14

monthly mortgage payment, James is paying a total of $1,044, roughly half of his present monthly income. Considering the parties' estimated monthly living expenses, and James's present income, I cannot say that the chancellor abused his discretion by awarding Kimberly $700 per month in alimony. However, given the chancellor's finding that James possesses an earning capacity of $90,000 per year, I would note that the amount of the award can be revisited by the chancellor upon a material change in circumstances. *See Armstrong*, 618 So. 2d at 1281 ("Periodic alimony may be modified by increasing, decreasing, or terminating the award, in the event of a material change of circumstances[.]").

¶39.    I concur with the majority's decision on attorney's fees.