JAMES, J.,
concurring in part and dissenting in part:
¶ 27. I agree with the majority’s decision regarding attorney’s fees. However, I would find that the chancellor abused his discretion by awarding Kimberly rehabilitative alimony rather than periodic alimony; therefore; I respectfully concur in part and dissent in part.
¶ 28. In Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the Mississippi Supreme Court set forth the factors to be used to determine whether a spouse is entitled to alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
*399 9.The tax consequences of the spousal order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; and
12. Any other factor deemed by the court to be just and equitable in connection with the spousal support.
A.The Parties’ Expenses and Income
¶ 29. James’s income, at the time of the proceeding, was $2,179 a month from unemployment benefits. The chancellor noted that Kimberly had no income and had not worked since 2008. Kimberly’s living expenses were $2,032 per month, while James’s living expenses totaled $3,404 per month. The chancellor further found:
[DJuring the past five years James shows earning[s] between $86,000 and $130,000. At the current minimum wage of $7.25 an hour, a [full-time worker] brings home around $1,070 each month. Under the facts in this case[,] the court is of the opinion that it is justified in imputing the ability of James to earn at least $90,000 a year and Kimberly to earn at least $12,000 a year.
B.Health and Earning Capacities of the Parties
¶ 30. The chancellor found James to be in good health and, at age forty-four, “entering his peak earning years.” The chancellor further noted that James’s substantially higher earning capacity gave him an objectively more secure financial future. In contrast, Kimberly, at age forty-two, suffered from diabetes, hypertension, and sleep apnea. The chancellor found these ailments to be well managed based on Kimberly’s testimony. Considering Kimberly’s health, age, and work history, the chancellor found that her earning capacity was limited to minimum wage or slightly better than minimum wage.
C.Other Findings
¶ 31. The parties were married for twenty-five years. The chancellor found that the James’s infidelity was the primary cause of the failure of the marriage. Finally, noting that alimony is properly considered in conjunction with the division of marital property, the chancellor took into account the disparity in the property division, noting that “under the ... division [of marital property,] Kimberly is receiving a substantially higher share of the marital assets.” The property subject to marital distribution included the marital home and household furnishings and four vehicles. The chancellor noted that “[without taking into account the household goods and furnishings, Kimberly is receiving all of the equity in the marital home of $35,000.00 and the Pontiac automobile valued at $6,325.00, for a total of $41,325.00[,] ... [and] James is getting three (3) vehicles valued at $5,700.00.”[3]
¶ 32. Based on these findings, the chancellor awarded Kimberly rehabilitative alimony of $700 per month for three years. Given the chancellor’s findings and the evidence and testimony at trial, I find that the chancellor abused his discretion in awarding rehabilitative alimony rather than periodic alimony.
¶33. “The purpose of alimony is not punitive, but instead, is designed to assist the spouse in meeting his or her reasonable needs while transitioning into a new life.” Elliott v. Elliott, 11 So.3d 784, 786 (¶ 8) (Miss.Ct.App.2009). Periodic alimony *400 is a “substitute for the marital-support obligation. The award of ... periodic alimony arises from the duty of the husband to support his wife.” Rogillio v. Rogillio, 57 So.3d 1246, 1250 (¶ 11) (Miss.2011) (internal citation omitted). As such, “a husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay.” Id. In other words, “a financially independent spouse may be required to support the financially dependent spouse in the manner in which the dependent spouse was supported during the marriage, subject to a material change in circumstances.” Id. On the other hand, “[rjeha-bilitative ... alimony is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim.” Cuccia v. Cuccia, 90 So.3d 1228, 1236 (¶ 25) (Miss.2012) (citing Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995)). Furthermore, “[rehabilitative alimony is not to be considered by the chancery court as an equalizer between the parties.” Id.
¶ 34. The chancellor found that Kimberly’s health issues were well managed, and he estimated that she possessed an earning capacity of $1,070 per month, or $12,000 per year.[4] However, these findings are inconsistent with the testimony at trial. Kimberly testified that, in addition to her diabetes, hypertension, and sleep apnea, she suffered from an unknown illness, for which she has been hospitalized several times. She further testified that her health issues prevented her from maintaining a job. Kimberly last worked in the pharmacy at Walmart; however, she was terminated for missing too much work due to her poor health. Likewise, the chancellor estimated Kimberly’s earning capacity to be $1,070 per month. However, Kimberly testified that her job at Wal-mart, which paid approximately $500 to $600 per month, was the most lucrative employment she had ever been able to secure. It is clear from her testimony that Kimberly was completely dependent on James for support.
¶ 35. These inconsistencies notwithstanding, the chancellor found that James had an earning capacity of $90,000 per year, while Kimberly had an earning capacity of $12,000 per year. This finding does not support an award of rehabilitative alimony of $700 per month for three years. Given Kimberly’s health problems and limited work history, I find it doubtful that she will be able to become self-supporting in the near future.
¶ 36. The disparity in the equitable distribution of the marital property is noted. Kimberly received property totaling $41,325.00, which includes the marital home, while James is getting three vehicles valued at $5,700. However, a disparity in the equitable distribution of the marital property should not be a mechanism to deny periodic alimony where the facts of the case warrant an award of periodic alimony. Here, the marital property consists of unliquidated assets. Kimberly cannot spend unliquidated assets, and the record does not show that she is capable of managing or generating funds from the assets to care for herself. James is required to support Kimberly in a manner to which she has become accustomed to the extent of his ability to pay. Rogillio, 57 So.3d at 1250 (¶ 11).
¶ 37. Therefore, I would find that the chancellor abused his discretion in awarding rehabilitative alimony rather than periodic alimony. Therefore, I would reverse the chancellor’s award of rehabilitative alimony.
*401 ¶ 38. An award of $700 per month for three years after twenty-five years of marriage is not an equitable award. It is completely inadequate. However, based on the parties’ present financial situation, I agree with the majority’s finding that the chancellor did not err in the amount of the award. When the alimony payment of $700 per month is considered with the monthly mortgage payment, James is paying a total of $1,044, roughly half of his present monthly income. Considering the parties’ estimated monthly living expenses, and James’s present income, I cannot say that the chancellor abused his discretion by awarding Kimberly $700 per month in alimony. However, given the chancellor’s finding that James possesses an earning capacity of $90,000 per year, I would note that the amount of the award can be revisited by the chancellor upon a material change in circumstances. See Armstrong, 618 So.2d at 1281 (“Periodic alimony may be modified by increasing, decreasing, or terminating the award, in the event of a material change of circumstances[.]”).
¶ 39. I concur with the majority’s decision on attorney’s fees.

. In addition, James was awarded two rings, guns, tools, and a dining-room table that James characterized as a family heirloom. All other personal property and household goods were awarded to Kimberly.

. To be precise, $1,070 per month would total $12,840 per year.