PIERCE, Justice,
for the Court:
¶ 1. Jonathan and Lea Ann Byrd were married in 1991. They had four children together: A.A. (born 1990), P.A. (born 1995), K.A. (born 1996), and N.A. (born 1999). Jonathan has two additional children, one of whom was born during his marriage to Lea Ann. In 2003, Lea Ann and Jonathan separated, and they have lived apart since then. Jonathan continued to support Lea Ann during the separation. During that time, she received her nursing degree and began working as a registered nurse. She is currently working on her nurse practitioner degree. Jonathan has provided a home, the Noland Topper Residence, for Lea Ann and their children, which is owned by the Byrd Sons Residual Trust (Trust), a testamentary trust established by Jonathan’s father for the benefit of Jonathan, his two brothers, Keith Byrd and Barry Lynn Byrd, and their children. Through proceeds from the Trust, Jonathan paid most expenses for the home and the children’s private education. During the marriage, Lea Ann was a stay-at-home mother. Because of Jonathan’s extramarital affair, which resulted in a child, Lea Ann filed for divorce. On August 25, 2011, the trial court entered a final order granting the parties a divorce. The chancellor awarded custody of the four girls to Lea Ann and granted Jonathan visitation.
¶ 2. The grant of divorce and custody are not at issue in this appeal. The appeal deals with the chancellor’s financial awards of property division, alimony, and child support. Much of the dispute centers upon the Trust. Jonathan is a one-third beneficiary of the Trust and also is a co-trustee. All assets from the Trust will be distributed to Jonathan, Keith, and Barry in September 2014. Each will receive one-third of the assets. The chancellor found the gross value of the Trust, excluding liabilities, totaled $14,781,285.28.
¶ 3. The chancellor valued the marital property of Lea Ann and Jonathan at $1,883,467.49 and ordered a cash payment to Lea Ann of $918,233.75. Due to the marital assets Lea Ann received and the likelihood of her earning a substantial income after completing her nurse practitioner’s degree, no permanent alimony was awarded. On rehearing, however, the chancellor awarded Lea Ann thirteen months of rehabilitative alimony of $1,500 per month and use of the marital home until October 2012. Jonathan was ordered to pay $3,000 a month in child support (which is an upward deviation from the child-support guidelines provided in Mis *447 sissippi Code Section 43-19-101), attorney fees, and $150,000 in sanctions.
¶ 4. Lea Ann raises numerous issues on appeal, which are accompanied by a number of subarguments. To avoid repetition, we have consolidated some of these issues, and we will address each of Lee Ann’s arguments accordingly. Additional facts, as necessary, will be related during our discussion of the issues.
DISCUSSION
¶ 5. This Court will not reverse a chancellor’s decision unless the chancellor’s findings are clearly erroneous, manifestly wrong, or the chancellor applied an incorrect legal standard. Pearson v. Pearson, 761 So.2d 157, 162 (Miss.2000). The chancellor’s ruling will be upheld if supported by substantial credible evidence. Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994).
I. Whether the trial court manifestly erred in its classification of Jonathan’s one-third interest in the Trust as his separate property, its valuation of the Trust, and its statement of Jonathan’s income.
¶ 6. Lea Ann first argues that the chancellor erred in classifying Jonathan’s one-third interest in the Trust as his separate property. She contends that the evidence is clear that, to the extent of Jonathan’s one-third interest in the Trust, the corpus of the Trust had been inextricably commingled with marital assets so as to transmute it to marital property.
¶ 7. Before a chancery court can divide a couple’s assets, it must first classify the assets as marital or separate property. Fisher v. Fisher, 771 So.2d 364, 368 (Miss.2000). “Marital assets” are those assets accumulated or acquired during the marriage. Wheat v. Wheat, 37 So.3d 632, 637 (Miss.2010). Excluded from the definition of “marital assets” are those assets attributable to one party’s separate estate prior to or outside the marriage. Craft v. Craft, 825 So.2d 605, 608 (Miss.2002). After classifying the parties’ assets as either marital or nonmarital, the chancellor should then proceed with the equitable division of the property using the factors set forth by the Supreme Court in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Finally, the chancellor should examine whether the equitable division of the marital property, considered in light of the nonmarital assets, adequately provides for both parties. Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (Miss.1999). “[I]f the marital assets, after equitable division and in light of the parties’ non-marital assets, will adequately provide for both parties, then ‘no more need be done.’ ” Id. (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)). But “if an equitable division of marital property, considered with each party’s non-marital assets, leaves a deficit for one party, then alimony should be con-, sidered.” Id.
¶ 8. Here, the chancellor found that Jonathan and Keith, using funds from the Trust, had purchased a furnished condominium, a boat slip, and a residence in Baldwin County, Alabama. Because these assets were used regularly by Jonathan’s family, the chancellor classified Jonathan’s half interest in these assets as marital property and appropriately assessed that interest in his equitable distribution of the parties’ marital estate. Lea Ann contends that this use of the Trust demonstrates that Jonathan treated it as his “personal piggy bank.” She maintains that Jonathan constantly took money out of the Trust to pay for other personal and/or family expenses, and he regularly transferred funds between the Trust and two partnerships, the St. Charles Plantation and Forrest Plantation (two separate farming opera *448 tions), in which each of the three brothers is a one-third partner.
¶ 9. The record before us reflects that the chancellor complied with precedent in classifying the parties’ assets prior to the equitable division of the property. In his findings of facts and conclusions of law, the chancellor found that the Trust, with the exception of a gold and diamond ring, is comprised solely of real property, cash, or cash equivalents. The chancellor thoroughly analyzed the evidence presented on the question of whether the Trust corpus had been commingled with the marital property so as to convert it to marital property. The chancellor found that, even though proceeds from the Trust might have been used to purchase assets which became marital property, at no time did any assets, proceeds, or money go into the Trust from the marriage. The chancellor concluded that the Trust corpus was exempt from being classified as marital property. The record supports the chancellor’s finding, and we find no merit in Lea Ann’s contention that the chancellor erred in classifying Jonathan’s one-third interest in the Trust as his separate property.
¶ 10. Next, Lea Ann argues that the chancellor manifestly erred in his valuation of the Trust. Lea Ann asserts that the chancellor incorrectly valued the Trust at $14,781,285.28. She contends that the correct value of the Trust is $17,750,827.28.
¶ 11. The difference in these figures represents contrasting valuations claimed by the parties with regard to certain properties. Based on our review of the evidence, the only clear error(s) made by the chancellor in his valuation of the Trust was his failure to include a $150,000 account receivable owed to the Trust (which constituted a Trust asset), an erroneous inclusion of a $195,000 debt (which constituted a Trust liability), and a $20,000 error in valuing property located in Nevada owned by the Trust. This amounted to a $360,000 difference from the chancellor’s valuation, of which Jonathan’s share would be $120,000.
¶ 12. We find the chancellor’s valuation error to be insignificant in this instance. The error pertains only to property belonging to the Trust, which the chancellor found to be nonmarital. Further, as will be addressed below, the chancellor’s equitable division of the marital property, considered in the light of the nonmarital assets, more than adequately provides for Lea Ann. Thus, the error was harmless. Cf. Tillman v. Tillman, 716 So.2d 1090, 1095 (Miss.1998).
¶ 13. Lastly, Lea Ann asserts that the chancellor manifestly erred in finding that Jonathan’s income from the Trust was $135,000. This figure represents Jonathan’s gross income of $175,000 less $40,000 in taxes. Lea Ann contends that the $135,000 number is incorrectly calculated, because the Trust pays Jonathan’s personal taxes.
¶ 14. The chancellor’s finding is based on the adjusted gross income after reviewing the relevant financial information. Accordingly, we find no error in the chancellor’s finding that Jonathan’s adjusted gross income amounts to $135,000.
II. Whether the trial court manifestly erred in its identification, characterization and valuation of certain marital property; and in making an equitable division of marital property pursuant to the Ferguson factors.
¶ 15. Lea Ann asserts on appeal that the chancellor erred in identifying, characterizing, and valuing the Duncan, Mississippi, residence (where Jonathan resides), her 2001 Cadillac, payments made by Jon *449 athan toward credit-card debts, and additional dissipation of marital assets by Jonathan.
¶ 16. First, Lea Ann argues that the chancellor should have valued the Duncan residence at $425,000, its 2011 appraisal value, rather than the $395,000 purchase price in 2006. The chancellor was presented both figures in determining the correct value to place on the home. The chancellor chose the purchase price based on his factual findings, and we find no abuse of discretion in the chancellor’s valuation of the Duncan residence.
¶ 17. Second, Lea Ann argues that the 2001 Cadillac should have been valued at $2,775, a figure determined by a Kelly Blue Book printout. The chancellor had valued the Cadillac at $15,000. Jonathan argues that, even if the value was incorrect, it has not affected Lea Ann’s share of the division of assets. We agree. The chancellor clearly noted in his findings of fact and conclusions of law that the division of assets did not include the Cadillac and home furnishings and fixtures, as these were awarded to Lea Ann outside her share of the marital property.
¶ 18. Third, Lea Ann argues that the chancellor failed to find that the full amount of the credit-card payments totaling $253,495.89 was a waste of marital funds that otherwise would have been available for division and, thus, allowed Jonathan to benefit from his misconduct in failing to comply with the chancellor’s order. Lea Ann asserts that the chancellor should have considered those payments for alimony and child support. Jonathan maintains that these payments were for the St. Charles Plantation and Forrest Plantation partnerships.
¶ 19. As the chancellor found, the Byrd brothers conducted their farming operations through these two entities. The Trust loaned money to St. Charles and Forrest for operating expenses and was repaid out of annual proceeds from the farming operations. Jonathan argues that the farming operations were winding down, and St. Charles and Forrest made credit-card payments between January 2008 and early 2009 for tying up the farming operations. Lea Ann argues that the payments must have been dissipation, because Jonathan had been out of the farming business since December 2008. The chancellor found that this was not a valid liability for purposes of divorce proceedings, because each brother owed the exact same amount to the partnerships in which they had a one-third interest each. The chancellor considered this as if Jonathan and his brothers had borrowed from themselves. The record supports the chancellor’s finding, and we find Lea Ann’s contention to be without merit.
¶ 20. Next, Lea Ann argues that the chancellor did not correctly calculate the dissipation of other marital assets. She states that the chancellor failed to account for $221,103.19, separate and apart from the cash withdrawals and gambling activities previously found by the chancellor to be dissipation. The figure of $221,103.19 was included in Lea Ann’s Rule 1006 summary showing dissipation of marital assets by Jonathan. Lea Ann argues that the chancellor should have included this amount plus $57,315.75, which Lea Ann asserts that Jonathan gave to his paramours, in its calculation of dissipation of marital assets.
¶ 21. Based on our review of the record, the chancellor considered all the evidence presented by the parties with regard to Lea Ann’s claim, and the chancellor found Jonathan’s evidence to be more credible. Thus, we cannot say that the chancellor erred with regard to his findings on the dissipation of marital assets.
*450 ¶22. Lastly, Lea Ann contends that the chancellor erred in making an equitable division of marital property pursuant to the Ferguson factors by overestimating her present ability to be self-sufficient. She asserts that her receipt of one-half of the marital property will be insufficient.
¶ 23. As noted in the first issue, once all property has been classified as marital or nonmarital, the chancellor must then equitably divide the marital property under the guidelines set forth in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). These factors include:
1. Substantial contribution to the accumulation of the property. Factors to be considered to determine contribution are direct or indirect economic contribution to the acquisition of property, contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage, and contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets;
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise;
3. The market value and the emotional value of the assets subject to distribution;
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 24. In classifying and valuing the marital estate, the chancellor took into account Jonathan’s withdrawal of substantial amounts of cash ($466,949.05) that he was unable to account for, his attempts to hide assets, and his failure to value assets at the outset of the divorce proceedings. The chancellor also took into consideration Jonathan’s adulterous conduct during the marriage and found it to be a viable factor in his Ferguson analysis. The chancellor found that, the total amount of the marital estate, less the 2001 Cadillac and all the furnishings in the residence that belongs to the Trust, is $1,836,467.49. And the chancellor awarded Lea Ann cash payments totaling $918,233.75. The chancellor determined that this amount and the transfer of other assets will sufficiently allow Lea Ann to purchase a home, finish her nurse practitioner education, and allow her to share in the support of her children. The chancellor found that upon the completion of her nurse practitioner studies and the passing of her board exam, Lea Ann will be eligible for a position that will pay her more than $100,000 a year in starting pay. After an equitable division of marital property, the trial court found *451 that Lea Ann should be able to finish her schooling, provide for her children, and live a very comfortable, if not a high, standard of living as a nurse practitioner. Based on our review of the record, we find no abuse of discretion in the Chancellor’s application of the Ferguson factors.
III. Whether the trial court manifestly erred in failing to award sufficient alimony to Lea Ann by: 1) failing to properly apply the Armstrong factors, 2) failing to take into account the substantial disparity in the parties’ financial postures pre and post-divorce and, thus, 3) failing to take into account Jonathan’s interest in the Trust as a source of funds from which to pay alimony.
¶ 25. This Court, in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), set out the factors used to determine where a spouse is entitled to alimony. These include:
1. The parties’ expenses and income;
2. The parties’ earning capacity and health;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7 The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; and
12. Any other factor deemed by the court to be “just and equitable” in connection with the spousal support.
¶ 26. Lea Ann asserts that the chancellor erred by not awarding her permanent periodic alimony. She argues that there was a large disparity in the parties’ financial postures and thus, she should be entitled to alimony from the Trust. Jonathan, on the other hand, asserts that Lea Ann earned a gross annual income of $60,000 for only eight months in 2009. She is in school finishing training and education to become a nurse practitioner, from which she will likely earn $100,000 annually in income. Plus, she was awarded almost $1 million in marital property.
¶ 27. Based on the equitable division of marital assets, Lea Ann’s future earning capacity, and the chancellor’s decision not to award alimony after reviewing the Armstrong factors and applying them to facts of this case, we cannot say that the chancellor erred in finding that Lea Ann’s needs were sufficiently met.
IV. Whether the trial court manifestly erred in ordering Lea Ann to vacate the Noland Topper Residence on or before October 1, 2012, and/or in failing to order Jonathan to provide a home for Lea Ann and the children as lump-sum alimony.
¶28. Lea Ann argues that the chancellor erred in ordering her to vacate the Noland Topper Residence on or before October 1, 2012, and/or failed to order Jonathan to provide a home for Lea Ann and the children as lump-sum alimony. The Noland Topper Residence is the home *452 where Lea Ann has been living with her children. She states that she will have to expend a large portion of her part of the equitable division of property to purchase a new home. Lea Ann noted that the chancellor, alternatively, could have awarded her the marital residence where Jonathan had been residing or at least have ordered him to pay the mortgage for the Noland Topper Residence in the form of lump-sum alimony.
¶ 29. The chancellor initially ordered Lea Ann to vacate the home within ninety days of her receipt of the first installment from Jonathan in the amount of $459,116.88. However, the chancellor modified his order and gave Lea Ann until October 2012 to vacate the residence. The chancellor took into account the equitable division of property and Lea Ann’s future earning capacity to arrive at his decision. This issue is without merit.
V. Whether the trial court manifestly erred in its application of the Mississippi Child Support Guidelines and calculation of child support obligations of the parties.
¶ 30. Lea Ann asserts that the chancellor manifestly erred in ordering her to share with Jonathan in the payment of all tuition and educational expenses for the benefit of the children, including their health and hospitalization insurance premiums and their private-school and college expenses. Lea Ann argues on appeal that requiring her to share payments with Jonathan is inequitable in light of the disparity in their incomes.
¶ 31. According to the record, the chancellor ordered that, after July 1, 2012, Lea Ann and Jonathan would share in these expenses equally. The chancellor has the discretion to weigh all factors and determine what is equitable and fair. In this situation, the chancellor has required Jonathan to pay all expenses with regard to tuition and education, plus all premiums incident to health and hospitalization insurance until July 1, 2012. After reviewing the record and the chancellor’s order, we cannot say that the chancellor erred in his decision to require the parties to split payments equally after July 1, 2012.
¶ 32. Lea Ann also asserts that the chancellor manifestly erred in failing to address the issue of payment of uninsured medical expenses for the benefit of the minor children. She argues that the chancellor’s opinion failed to consider out-of-pocket costs for the parties. Pursuant to Mississippi Code Section 43-19-101(6), all orders involving the support of minor children shall include reasonable medical support. Miss.Code Ann. § 43-19-101(6) (Rev.2009). Because the chancellor failed to address costs not covered by medical insurance, we must reverse and remand on this issue so that the trial court can make a proper determination.
¶ 33. Lea Ann also asserts that the chancellor manifestly erred in failing to order Jonathan to maintain life insurance and/or other security for the payment of his child-support obligations in the event of his death prior to the youngest child’s age of majority. The chancellor may have determined that, due to Jonathan’s interest in the Trust, the children were adequately protected. Nevertheless, because the chancellor failed to address this specific issue in his opinion, and because this .matter is being remanded to the trial court, the chancellor may address this matter on remand.
¶ 34. Finally, Lea Ann asserts that the chancellor erred in making determinations relative to Jonathan’s obligations for the support of his children from another marriage. Based on our review of the record, there is no indication *453 that the chancellor included Jonathan’s obligation to the other children in determining his child support percentage in this case. Accordingly, we find no merit in this contention.
VI. Whether the trial court manifestly erred in failing to award Lea Ann all attorney’s fees, expert fees, and litigation expenses which she incurred throughout the divorce litigation, and whether the trial court manifestly erred in failing to sanction Jonathan’s counsel for his misconduct during the pendency of the case.
¶ 35. Lea Ann asserts that the chancellor erred in failing to award her all attorney’s fees, expert fees, and litigation expenses. She argues that she incurred a multitude of expenses as a result of Jonathan’s attempts to conceal his financial information. The chancellor awarded Lea Ann $75,000 in attorney’s fees in addition to the amount previously awarded. The chancellor considered all of the issues in calculating attorney fees, and we cannot say that he erred in his findings with regard to attorney fees.
¶ 36. Finally, Lea Ann argues that the chancellor erred in failing to sanction Jonathan’s counsel for his alleged misconduct. She argues that Jonathan’s counsel’s conduct caused her to incur unnecessary fees and expenses in determining Jonathan’s true assets.
¶ 37. Pursuant to Rule 37 of Mississippi Rules of Civil Procedure, the trial court may impose upon any party or counsel such sanctions as may be just. Here, the chancellor found that Jonathan, not his counsel, was responsible for continuously violating the rules of discovery and for failing to abide by the trial court’s orders. Accordingly, the chancellor sanctioned Jonathan in the amount of $150,000, which did not include the additional $75,000 in attorney’s fees awarded to Lea Ann. We find that the chancellor did not abuse his discretion in not sanctioning Jonathan’s attorney. This issue is without merit.
CONCLUSION
¶ 38. We find that the chancellor erred in failing to address costs not covered by medical insurance for the minor children. This Court reverses and remands on this issue so that the chancellor can make a proper determination. Further, on remand, the chancellor should reconsider whether it is necessary for Jonathan to maintain life insurance in order to protect his children in case of his death. With regard to all other issues, this Court affirms.
¶ 39. AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR.