**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2023-CA-00213-SCT**

*KATHERINE CASSELL*

*v.*

*WILLIAM CASSELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/2023 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| TRIAL COURT ATTORNEYS: | JENNIFER LEIGH BOYDSTON |
| | DAVID BRIDGES |
| | B. BLAKE TELLER |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID BRIDGES |
| ATTORNEY FOR APPELLEE: | B. BLAKE TELLER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/20/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Katherine Cassell (Kathy) appeals from a final judgment of divorce. She argues that William Cassell (Bill) did not rebut the marital property presumption with regard to two separate tracts of land and that the chancellor should have fully considered and granted an award of lump sum alimony. The chancellor did not err in his findings of fact and conclusions of law, and, therefore, the judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Kathy and Bill married on August 17, 1991, in Claiborne County. They did not have any children together, but they each had children from previous marriages. Prior to the marriage,

Bill and his two siblings had inherited land in Mississippi from their mother. Along with their father, Bill and his siblings formed Waterloo Farms, Inc. (Waterloo), in 1987, which held title to the inherited land. In addition to the inherited land, Waterloo owned land consisting of two tracts—Tract One and Tract Two—located in Claiborne County. Tract One was an amalgamation of inherited land and land that Waterloo purchased from Mississippi River Lodge, LLC in 2008. Tract Two was purchased by Waterloo in 1990 from James Beesley. In that same year, Waterloo sold a portion of Tract Two to Black Creek Planting Company, Inc. Subsequently, Waterloo bought the portion of Tract Two back from Black Creek Planting Company, Inc., in 1997.

¶3.     In 1996, after Kathy and Bill were married, Bill began farming as Valley of the Moon Farms, LLC (VOM). VOM was owned 50 percent by Bill and 50 percent by Moon Planting Company, Inc. (MPC). MPC was formed by Bill's father, and in 1998, he transferred 99 percent of MPC's ownership to Kathy and 1 percent to Bill. In summary, VOM was owned 50 percent by Bill and 50 percent by MPC—of which Bill owned 1 percent and Kathy owned 99 percent.

¶4.     Kathy and Bill maintained two bank accounts—one personal joint account and one account for VOM. Revenue from VOM was deposited into the VOM account and from there, money would be transferred into Kathy and Bill's joint personal account for monthly expenses. VOM would also pay both Kathy and Bill's personal credit cards. In addition to the couple's personal expenses, the VOM account paid all of VOM's business expenses, such as rent to Waterloo to farm the land, farm equipment, fuel and seed. Bill also received distributions from

Waterloo, which he would place in the VOM account.

¶5.     In 2006, Bill, his brother and Fred Hart purchased property in Kansas using money from Waterloo distributions. In 2012 or 2013, they exchanged the property in an Internal Revenue Code Section 1031 tax-free exchange[1] for a second piece of property in Kansas. Bill testified that in 2019, this second property was either similarly exchanged under Section 1031, or it was sold, and the proceeds were used to acquire property from Daniel and Ashley Turley (Turley Property). A warranty deed conveying the second property to Lamar and Jacob Perry was signed by Kathy along with Bill and his brother. Bill testified that Kathy's signature was required to convey the property according to Kansas state law. There were no deeds entered into evidence that identified Kathy as a grantee of any of the properties in Kansas. When Bill and his brother obtained the Turley Property, Bill received a two-thirds interest, while his brother received a one-third interest. Only Bill and his brother signed the warranty deed for the Turley Property, acknowledging the receipt of the property.

¶6.     In 2020, Bill and his brother purchased another property in Kansas from Kenneth and Julia Thompson and Wayne and Glenda Thompson (Thompson Property) using money from a tax-free exchange of land combined with cash that came out of the VOM account. Bill testified that the cash from the VOM account used to acquire the Thompson Property was money he received as a distribution from Waterloo. He could not point to a specific Waterloo distribution, however, and he admitted on cross-examination that the funds were placed into the VOM account and that the check used to purchase the Thompson Property came from the

_____

[1]Simply put, Section 1031 allows for the exchange of property for property without the recognition of a gain or loss for tax purposes.

3

VOM account, stating, "I put in distributions all along, and I don't have any other accounts. I just put it in Valley of the Moon Farms. I thought it was the same as me."

¶7. After thirty years of marriage, the couple separated in 2021, and Kathy filed for divorce on the grounds of uncondoned adultery and, alternatively, habitual cruel and inhuman treatment and irreconcilable differences. Both Kathy and Bill stated that their interests had diverged and they had grown apart over the years. This divergence of interests is what Bill claimed led him to have an affair. Kathy sought an equitable division of the marital estate, permanent periodic alimony, lump sum alimony and for Bill to maintain her medical and dental insurance and his own life insurance for which she was the sole beneficiary. Kathy also requested reasonable attorneys' fees.

¶8. On November 22, 2021, the chancery court entered an Agreed Temporary Order, which awarded Kathy temporary alimony in the amount of $7,610 per month, maintenance of her health insurance premiums and exclusive use and possession of the marital residence and its contents. The order also governed the operations of VOM and MPC. After the order was entered in November, Bill and his brother formed Moon Land Company, LLC (MLC), in December 2021. Bill and his brother exchanged their stock in Waterloo with their sister for title to Tract Two through MLC. In summary, Bill was left with a 50 percent interest in MLC—which owned Tract Two—and he no longer had an ownership interest in Waterloo.

¶9. A trial took place from June 29 to July 1, 2022. On February 8, 2023, the chancellor entered a final judgment of divorce and his findings of fact and conclusions of law. The chancellor granted the divorce on the ground of uncondoned adultery. Among other assets, the

4

chancellor classified Tract Two and the Turley Property as Bill's separate property, and classified the Thompson Property and the VOM account as marital property. In total, Bill's separate property was valued at $5,341,640.14. After classifying and equitably dividing the various marital assets applying the **Ferguson**[2] factors, the chancellor considered Kathy's alimony request weighing the **Armstrong**[3] factors and awarded her permanent periodic alimony in the amount of $7,500 per month. In total, Kathy was awarded permanent periodic alimony and 40 percent of the marital estate, and the court ordered Bill to maintain life insurance for which Kathy was the sole beneficiary in the amount of $500,000 and to maintain Kathy's health insurance until she turned sixty-five or was able to obtain Medicare. Kathy's portion of the marital estate amounted to a lump sum payment of $667,557,[4] whereas Bill's portion of the marital estate was valued by the chancellor at $1,861,629.53. From this final judgment and findings of fact and conclusions of law, Kathy appeals.

## ISSUES PRESENTED

¶10.  Kathy raises two issues on appeal:

  I.     Whether Bill failed to rebut the marital property presumption for Tract Two and the Turley Property.

  II.    Whether the chancellor failed to consider and grant lump sum alimony.

## STANDARD OF REVIEW

---

[2]***Ferguson v. Ferguson***, 639 So. 2d 921 (Miss. 1994).

[3]***Armstrong v. Armstrong***, 618 So. 2d 1278 (Miss. 1993).

[4]This amount reflects Kathy's award of marital assets lessened by the debt assigned to her.

5

¶11. "This Court will not reverse a chancellor's decision unless the chancellor's findings are clearly erroneous, manifestly wrong, or the chancellor applied an incorrect legal standard." *Byrd v. Byrd*, 100 So. 3d 443, 447 (Miss. 2012) (citing *Pearson v. Pearson*, 761 So. 2d 157, 162 (Miss. 2000)). "The chancellor's ruling will be upheld if supported by substantial credible evidence." *Id.* (citing *Carrow v. Carrow*, 642 So. 2d 901, 904 (Miss. 1994)). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Lewis v. Pagel*, 172 So. 3d 162, 172 (Miss. 2015) (internal quotation marks omitted) (quoting *Gutierrez v. Gutierrez*, 153 So. 3d 703, 707 (Miss. 2014)). As always, questions of law are reviewed de novo. *Id.*

**DISCUSSION**

I.     **Marital Property Presumption**

¶12.    "[T]here is generally a presumption that property acquired during the marriage is marital property." *Yancey v. Yancey*, 752 So. 2d 1006, 1011 (Miss. 1999) (citing *Maslowski v. Maslowski*, 655 So. 2d 18, 20 (Miss. 1995)). "Excluded from the definition of 'marital assets' are those attributable to one party's separate estate prior to or outside the marriage." *Byrd*, 100 So. 3d at 447 (citing *Craft v. Craft*, 825 So. 2d 605, 608 (Miss. 2002)). The spouse claiming that an asset acquired during the marriage is their separate property bears the burden of proof. *Wheat v. Wheat*, 37 So. 3d 632, 640 (Miss. 2010) (citing *A & L, Inc. v. Grantham*, 747 So. 2d 832, 839 (Miss. 1999)). "This burden goes beyond a mere demonstration that the asset was acquired prior to marriage." *Id.* (citing *Grantham*, 747 So. 2d at 839). Furthermore, actions

6

of the spouses—such as the commingling of separate and marital property or the use of separate property for the benefit of the family—can change the character of an asset. ***Johnson v. Johnson***, 650 So. 2d 1281, 1286 (Miss. 1994); ***Stewart v. Stewart***, 864 So. 2d 934, 937 (Miss. 2003).

¶13.    When determining property division in a divorce action, "the chancellor must do three things: '(1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably.'" ***Burnham v. Burnham***, 185 So. 3d 358, 361 (Miss. 2015) (quoting ***Wheat***, 37 So. 3d at 637). Kathy maintains that when classifying the parties' assets, the chancellor incorrectly classified Tract Two and the Turley Property as Bill's separate property. Both properties were acquired during the marriage,[5] and Kathy contends that Bill failed to rebut the marital property presumption. Since this Court has never expressly ruled on the burden of proof required to rebut the marital property presumption, she urges this Court to adopt a clear and convincing evidence standard. Kathy also urges this Court to state "whether the burden includes production of corroborating documents[.]" In support, Kathy points to several states that have adopted a clear and convincing evidence standard of proof to rebut the marital property presumption, including Maine, Illinois, Missouri, Texas, Delaware, and Kentucky. *See* ***Spooner v. Spooner***, 850 A.2d 354, 362 (Me. 2004); ***In re Marriage of Severns***, 416 N.E.2d 1235, 1238 (Ill. App. Ct. 1981); ***Johnson v. Johnson***, 856 S.W.2d 921, 925 (Mo. Ct. App. 1983); ***Sink v. Sink***, 364 S.W.3d 340, 346 (Tex. App. 2012); ***Clark v. Clark***, 994 A.2d 744 (De. 2010); ***Browning v. Browning***, 551 S.W.2d 823, 825 (Ky. Ct. App.

---

[5]Tract Two was partially acquired during the marriage.

1977).[6]

¶14. This Court has not affirmatively declared a standard of proof to rebut the marital property presumption. Generally, "[t]he burden of proof in an ordinary civil case is by preponderance of the evidence." *James M. Burns Lumber Co., Inc. v. Dilworth*, 676 So. 2d 892, 893 (Miss. 1996) (citing *Amiker v. Brakefield*, 473 So. 2d 939, 940 (Miss. 1985)). Even though some states have since expanded its application, initially, in states that adopted a clear and convincing evidence standard to rebut the marital property presumption, the majority adopted the standard specifically with regard to *jointly titled* property. *See Spooner*, 850 A.2d at 362; *Severns*, 416 N.E.2d at 1238; *Conrad v. Bowers*, 533 S.W.2d 614, 622 (Mo. Ct. App. 1975); *Collins v. Collins*, 61 S.W.3d 818, 822 (Ark. 2001); *Hook v. Hook*, 938 N.E.2d 1094, 1098-97 (Ohio Ct. App. 2010).

¶15. In *Sutliff*, 543 A.2d at 537, the Pennsylvania Supreme Court was faced with this same issue: what standard of proof should apply to rebut the marital property presumption? Pennsylvania's marital property presumption was statutory, and the statute was silent regarding the burden of proof required to rebut the presumption. *Id.* at 538. The superior court (Pennsylvania's court of appeals) held that clear and convincing evidence applied, stating "that because that standard [was] applied in *certain* other civil cases, it should be applied [to the marital property presumption] as well." *Id.* Pennsylvania's Supreme Court reversed, however, reasoning that

---

[6]Kathy also cites *Sutliff v. Sutliff*, 522 A.2d 1144, 1148-49 (Pa. Super. Ct. 1987), a case that was overruled on the very issue of the standard of proof required to rebut the marital property presumption. *See Sutliff v. Sutliff*, 543 A.2d 534, 538 (Pa. 1988).

8

The basis for imposing the standard of clear and convincing proof was indicated in the decision below to be that the wisdom of experience has demonstrated a need for greater certainty when dealing with this subject matter, due to the fact that certain social consequences and harsh or far-reaching effects on individuals may ensue from a determination that any given property is not marital in nature. Yet, in any case where economic interests of the parties are to be adjudicated, as is the case where rights to marital property are to be determined, it is obvious that the parties involved will incur the effects of the adjudication. It is not clear, however, that the effects are any greater in this realm than when other economic and property interests are at stake, and, thus, it does not appear that a higher standard of proof is, of necessity, required.

. . . We perceive no basis, in logic, public policy, or otherwise, to infer that the "showing" required under the instant statute was intended by the legislature to be an enhanced one, requiring more than the usual preponderance of the evidence to establish the necessary proof.

*Id.*

¶16.    Mississippi's marital property presumption is judicially crafted, not a creature of statute like in Pennsylvania. *See* ***Hemsley v. Hemsley***, 639 So. 2d 909, 914 (Miss. 1994); ***Ferguson***, 639 So. 2d at 926-27. This Court finds the reasoning of the Pennsylvania court to be instructive, however, and holds that the same should apply to the current case. Mississippi does apply the heightened burden of clear and convincing evidence to rebut some presumptions: undue influence and the natural parent presumption. ***Griffin v. Armana***, 687 So. 2d 1188, 1193 (Miss. 1996); ***Mullins v. Ratcliff***, 515 So. 2d 1183, 1193 (Miss. 1987); ***Davis v. Vaughn***, 126 So. 3d 33, 37 (Miss. 2013). Like the Pennsylvania court reasoned, however, the marital property presumption does not present this Court with the same concerns that warrant the heightened evidentiary burden that undue influence and the natural parent presumption present. In addition to Pennsylvania, the states of Arkansas, Ohio, North Carolina, and Virginia also apply a preponderance of the evidence standard of proof in this context. *See* ***Collins***, 61

9

S.W.2d at 822; ***Hook***, 938 N.E.2d at 1097; N.C. Gen. Stat. § 50-20(b)(1); ***Joynes v. Payne***, 551 S.E.3d 10, 23 (Va. Ct. App. 2001); *see also* 3 Equitable Distrib. of Property 4th § 10:27.5 (noting that most states with a statutory marital property presumption that do not explicitly provide for a standard of proof to rebut have held that a preponderance of the evidence is sufficient).

¶17.    A preponderance of the evidence is sufficient to rebut the marital property presumption in Mississippi.[7] This Court declines to adopt a clear and convincing evidence standard and, instead, adopts a preponderance of the evidence standard of proof to rebut the marital property presumption.

### A.    Tract Two

¶18.    The first property that Kathy contends was wrongly classified is Tract Two. As stated earlier, Waterloo purchased Tract Two in 1990 from James Beesley. It then sold a piece of Tract Two in 1990 and subsequently repurchased that piece in 1997. The portion of Tract Two that was bought back in 1997 was acquired during Kathy and Bill's marriage. Notably, Tract Two was purchased and held by *Waterloo*, not Bill. Waterloo is a corporation—a separate and distinct entity apart from Bill. Although Bill was a part owner of Waterloo at the time the transactions occurred, his ownership interest in Waterloo was acquired in 1987, several years prior to his marriage to Kathy.

¶19.    Kathy notes that Bill acquired a 3.33 percent ownership interest increase in Waterloo

---

[7]There is no evidence of contested jointly titled property in this case to warrant consideration of a higher standard of proof. This issue, however, is not before the Court at this time.

during the marriage because Bill's father was bought out of the business. Bill's deposition and trial testimony differed on the manner in which his father was bought out of Waterloo. At his deposition, Bill stated that he and his siblings bought out his father's interest. At trial, however, Bill testified that it was Waterloo that bought out his father's shares and redistributed those shares among Bill and his siblings. Bill attempted to clarify at trial that he meant the corporation when he referred to himself and his siblings at his deposition, stating "[w]e were the corporation." In his findings of fact and conclusions of law, the chancellor found that "the additional 3.33% interest did not result from Bill's efforts but continued to be from a non-marital source or from restructuring of the separate property ownership and therefore is an increase of Bill's separate property." This Court finds that the chancellor did not abuse his discretion by classifying the increase in ownership interest as Bill's separate property.

¶20.   Mississippi's definition of marital property excludes property acquired prior to the marriage or property attributable to one spouse's separate estate. *Byrd*, 100 So. 3d at 447 (citing *Craft*, 825 So. 2d at 608). Because this type of property is excluded from the definition of marital property—as Bill's initial interest in Waterloo preceded the marriage and his ownership increase was not attributable to his efforts during the marriage—the marital property presumption *does not apply* to Tract Two. Therefore, the burden to rebut the marital property presumption did not rest on Bill since no presumption of marital property arose.

¶21.   Alternatively, Kathy argues that Tract Two was Bill's separate property and that it became their marital property through commingling. "Assets which are classified as non-marital, such as inheritances, may be converted into marital assets if they are commingled with

marital property or utilized for domestic purposes, absent an agreement to the contrary."

*Stewart*, 864 So. 2d at 937 (internal quotation marks omitted) (quoting ***Boutwell v. Boutwell***,

829 So. 2d 1216, 1221 (Miss. 2002)). An asset's separate property character can be changed

by commingling "[w]hen separate property and marital property are mixed to such a degree

that the elements cannot be distinguished[.]" ***Brock v. Brock***, 906 So. 2d 879, 888 (Miss. Ct.

App. 2005) (internal quotation mark omitted) (quoting Laura W. Morgan & Edward S. Snyder,

*When Title Matters: Transmutation and the Joint Title Gift Presumption*, 18 J. Am. Acad.

Matrim. Law 335, 341 (2003)).

¶22. If Kathy wished for Tract Two to be classified as marital property, the burden rested

with her to demonstrate the transmutation of Tract Two, whether that be by commingling, an

agreement between the spouses, or the use of the property to benefit the family. *See **Johnson***,

650 So. 2d at 1286; ***Stewart***, 864 So. 2d at 937; *see also **Brock***, 906 So. 2d at 888 (quoting

Morgan & Snyder, *supra*, at 341); ***Oliver v. Oliver***, 812 So. 2d 1128, 1134-35 (Miss. Ct. App.

2002). Kathy failed to present any evidence that Tract Two was commingled such that the

character of the asset changed. Furthermore, Bill, as an individual, never owned Tract Two.

Tract Two was at all relevant times owned by Waterloo—and later by MLC.[8] Because Kathy

failed to present evidence that Tract Two became marital property through commingling, this

Court affirms the chancellor's finding that Tract Two was Bill's separate property.

        B.     Turley Property

---

[8]Throughout her brief, Kathy equates Bill's ownership interest in Waterloo with the ownership of Tract Two. We note that arguing Tract Two was commingled is irrelevant and misleading. Bill had an ownership interest in Waterloo, which in turn, owned Tract Two. For consistency, however, we simply refer to the contested interest as Tract Two.

¶23.    Kathy argues that the chancellor erred by classifying the Turley Property as Bill's separate property. In 2019, Bill acquired a two-thirds interest in the Turley Property located in Kansas alongside his brother's one-third interest. The Turley Property was acquired through a series of transactions spanning from 2006 to 2019 and involving at least one Section 1031 exchange. In 2006, Bill, his brother and Fred Hart purchased property in Kansas. Bill testified that he paid for his portion of the property with money he received as a distribution from Waterloo. That property was exchanged for a second property in Kansas, and finally the Turley Property was bought with the proceeds from the sale or exchange of the second property. Bill testified that, although he personally acquired the various properties, the money used to purchase the initial property was derived from distributions that he received from Waterloo. Bill also testified that Kathy signed the second property's deed of transfer because Kansas law mandated that both spouses sign the document.[9]

¶24.    Generally, property acquired during the span of the marriage is presumed to be marital property. *Yancey*, 752 So. 2d at 1011 (citing *Maslowski*, 655 So. 2d at 20). The Turley Property, acquired in 2019, was property acquired during the marriage that Bill acquired as an individual—not through his ownership interest in Waterloo, like Tract Two. Therefore,  the marital property presumption does apply to the Turley Property, and Bill was required to rebut that presumption in order to have the property classified as separate. *Wheat*, 37 So. 3d at 640

---

[9]No evidence was offered, aside from Bill's testimony, that Kansas law mandated Kathy's signature on the deed of transfer. Kansas Statute Annotated Section 59-505 allows for a surviving spouse to claim a one-half interest in any real property disposed of the by the decedent spouse if the surviving spouse did not consent in writing to the disposal of the real property. The statute specifically exempts surviving spouses that are not residents of Kansas or were not residents of Kansas at the time of the conveyance.

(citing **Grantham**, 747 So. 2d at 839).

¶25.    To rebut the presumption, Bill needed to demonstrate by a preponderance of the evidence that the Turley Property was acquired with his separate estate. **Id.** A preponderance of the evidence asks the trier of fact to determine "whether the evidence preponderates in the [party]'s favor, that is, produces rational belief that the factual predicates of the [party]'s claims are more likely true than not." **Hickman v. State ex rel. Miss. Dep't of Pub. Safety**, 592 So. 2d 44, 46 (Miss. 1991). In support of his claim that the Turley Property was separate, Bill testified that the money he used to purchase the first property in Kansas was from Waterloo, which was Bill's separate property that he acquired prior to the marriage. Through his testimony, Bill traced the source of the funds for the Turley Property back to distributions he received from Waterloo—his separate property.

¶26.    Kathy conversely argues that the Waterloo distribution that Bill used to purchase the property was commingled with their marital property when Bill placed the distribution into the VOM account. Bill testified that although the distribution was placed into the VOM account, it was not commingled because it was only temporarily placed in the VOM account, and he could identify a specific Waterloo distribution that was used to purchase the Turley Property. In **Oliver**, 812 So. 2d at 1134-35, the Court of Appeals, interpreting this Court's **Johnson**, 650 So. 2d 1286, decision, held that the transmutation of property does not automatically occur "simply because they are placed in the same account. We opine that the intent of the court in **Johnson** and other cases of its kind was that a party must prove that these commingled funds were not only present in a joint marital account, but were being used for the benefit of the other

14

spouse and/or the entire family." *Oliver*, 812 So. 2d at 1135 (citing *Johnson*, 650 So. 2d at 1286). We hold that the Court of Appeals was correct in its interpretation of *Johnson*. Bill presented sufficient evidence for the chancellor to find that he rebutted the marital property presumption and that the Turley Property was his separate property. Furthermore, Kathy failed to present any evidence that the Waterloo distribution used to purchase the Kansas property was sufficiently commingled so as to transform it into marital property. On this issue, the chancellor's decision is affirmed.

## II.     Lump Sum Alimony

¶27.     Kathy's final point of contention is that the chancellor failed to fully consider and grant lump sum alimony in addition to permanent periodic alimony. She argues that the chancellor should have granted her lump sum alimony request pursuant to the factors enumerated in *Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988). Instead of *Cheatham*, the chancellor considered Kathy's alimony request pursuant to the  factors listed in *Armstrong*, 618 So. 2d at 1280. Regardless of which factors were used to consider Kathy's request, she contends the chancellor erred by not granting lump sum alimony. Bill argues that the chancellor's determination of alimony pursuant to the *Armstrong* factors was proper. He also argues that *Cheatham* is no longer the standard by which chancellors are to consider alimony requests.

¶28.     If lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the *Ferguson* factors. However, if the alimony, lump-sum or otherwise, is awarded *subsequent to* the equitable distribution of the marital assets, then chancellors must conduct their analysis under the *Armstrong* factors.

15

*Davenport v. Davenport*, 156 So. 3d 231, 241 (Miss. 2014) (citations omitted). "If, after equitable division, an equitable deficit exists, the chancellor then should consider alimony." *Carney v. Carney*, 201 So. 3d 432, 440 (Miss. 2016) (citing *Rogillio v. Rogillio*, 57 So. 3d 1246, 1248 (Miss. 2011)). After equitably dividing the marital estate, the chancellor determined that Kathy was left with a deficit and, therefore, considered her alimony request. The chancellor did not grant her request for lump sum alimony, but instead awarded Kathy permanent periodic alimony in the amount of $7,500 per month. "Whether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor." *Id.* (internal quotation marks omitted) (quoting *Parsons v. Parsons*, 678 So. 2d 701, 703 (Miss. 1996)). The chancellor fully considered the *Armstrong* factors and did not abuse his discretion by awarding permanent periodic alimony and denying lump sum alimony.

¶29.    In *Carney*, 201 So. 3d at 442 (citations omitted), this Court held that the *Armstrong* factors were the proper factors to consider following equitable division of the marital estate, stating:

> *Cheatham* predates *Ferguson*, and "the *Cheatham* factors were simply an earlier attempt by this Court to provide a chancellor with guidlines for awarding what today is called an equitable distribution of marital assets, under appropriate circumstances." Because the *Ferguson* and *Cheatham* factors serve the same purpose, this Court has held that chancellors can rely on *Ferguson* instead of *Cheatham* when using lump sum alimony as a mechanism for equitably dividing marital assets. "But when the chancellor awards lump-sum or periodic alimony after equitably dividing the estate, the chancellor should consider the *Armstrong* factors."

Issuing his findings of fact and conclusions of law, the chancellor divided the estate under *Ferguson* and then proceeded to consider alimony under *Armstrong*, following the procedure

set out in *Carney*, 201 So. 3d at 442. The chancellor followed the proper procedure and considered the correct factors.

¶30.    Accordingly, we overrule *Cheatham*, 537 So. 2d at 438, insofar as it has any bearing on a chancellor's alimony considerations and solidify that *Ferguson* and *Armstrong* enumerate the factors to be considered. "Ordinarily, [this Court does] not overrule erroneous precedent unless it is 'pernicious,' 'impractical,' or is 'mischievous in its effect, and resulting in detriment to the public.'" *Caves v. Yarbrough*, 991 So. 2d 142, 151 (Miss. 2008) (citations omitted) (quoting *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 635 (Miss. 1991)). *Cheatham* causes unnecessary confusion that is impractical and pernicious and is overruled.

## CONCLUSION

¶31.    The chancellor's classification of property and award of alimony are affirmed. We find that the burden of proof to rebut the presumption of marital property is by a preponderance of the evidence. Furthermore, the party claiming property excluded from marital property has been commingled and transformed into marital property bears the burden of proof, likewise by a preponderance of the evidence. Finally, we overrule *Cheatham* insofar as it has any bearing on a chancellor's decision to award alimony and reaffirm the factors enumerated in *Ferguson*—awarding alimony during the division of the estate—and *Armstrong*—awarding alimony subsequent to the division of the estate—as the appropriate factors to be considered.

¶32.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**